IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

AUDRA F. MOORE,

     Plaintiff,

vs.                                             No. 12-3098-STA-dkv

CARRINGTON MORTGAGE SERVICES, LLC;
CARRINGTON MORTGAGE LOAN TRUST;
DEUTSCHE BANK NATIONAL TRUST;
NEW CENTURY MORTGAGE CORPORATION;
WASHINGTON MUTUAL, INC.; HOMESIDE
LENDING, INC.; AMERIFIRST MORTGAGE;
BENEFICIAL TENNESSEE, INC.;
FORECLOSURE MANAGEMENT COMPANY;
and DOES 1-20,

     Defendants.

---

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS
AND *SUA SPONTE* DISMISSAL

---

On December 27, 2012, the plaintiff, Audra F. Moore, a resident of Shelby County, Tennessee, filed a *pro se* Complaint to Restrict and Prohibit Foreclosure and Sale, For Damages and Demand for Trial[1] (D.E. 1), accompanied by a motion seeking leave to proceed *in forma pauperis*, (D.E. 2). On January 16, 2013, the court issued an order

---

[1]    The complaint is obviously a form complaint used by other *pro se* plaintiffs in this district in similar lawsuits. The complaint refers to the laws of other states (*see, e.g.*, ¶¶ 36-37), identifies the plaintiff by the incorrect gender (*see, e.g.*, ¶ 25, ¶ 91), and contains no fact-specific allegations against the defendants by name other than Carrington Mortgage Services, LLC and Carrington Mortgage Loan Trust. Indeed, the nearly identical complaint was filed in *Nooh v. Recontruct Co.*, No. 11-2506-STA-dkv (W.D. Tenn. June 20, 2011), ECF No. 1 (dismissed Mar. 29, 2012).

granting Moore leave to proceed *in forma pauperis*, (D.E. 3), and referred the case to the *pro se* staff attorney for screening pursuant to Local Rule 4.1. This case has now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order of Reference, D.E. 10.) For the reasons that follow, it is recommended that this case be dismissed for lack of subject-matter jurisdiction and for failure to state a claim.

I. PROPOSED FINDINGS OF FACT

This is an action to prohibit a nonjudicial foreclosure of real property located at 5617 Annandale Drive, Memphis, Tennessee 38125. According to the complaint, on or about December 10, 2012, the defendant Carrington Mortgage Services, LLC issued a notice to Moore via telephone that her mortgage loan had been referred to foreclosure proceedings. (Compl., D.E. ¶ 19.) Named as defendants are: Carrington Mortgage Services, LLC; Carrington Mortgage Loan Trust; Deutsche Bank National Trust; New Century Mortgage Corporation; Washington Mutual, Inc.; Homeside Lending, Inc.; Amerifirst Mortgage; Beneficial Tennessee, Inc.; Foreclosure Management Company; and John Does 1-20.[2]

The complaint states that Moore "executed a Deed of Trust to Dewrell Sacks, LLP as Trustee for the benefit of New Century Mortgage

---

[2] Service of process cannot be made on unnamed or fictitious parties. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is recommended that the complaint be dismissed against the John Doe defendants.

Corporation," which Deed of Trust was filed on April 22, 2005, and recorded with the Shelby County Register as Instrument No. 05062342. (*Id.* ¶ 17.)   Attached to the complaint as Exhibit 3 is a Deed of Trust dated April 5, 2005, recorded as Instrument No. 05062343 on April 22, 2005, pursuant to which the borrowers, Hansel D. Moore and wife, Audra F. Moore, transferred to New Century Mortgage Corporation an interest in the real property located at 5617 Annandale Drive, Memphis, Tennessee 38125 as security for repayment of a loan dated April 5, 2005 in the amount of $148,500. (*Id.*, Ex. 3.)   Attached to the complaint as Exhibit 1 is an Assignment of Deed of Trust dated July 19, 2010, in which New Century Mortgage Corporation, by and through Carrington Mortgage Services, LLC as its attorney in fact, transferred to Deutsche Bank National Trust Company, as Trustee for Carrington Mortgage Loan Trust, all beneficial interest under the Deed of Trust dated April 5, 2005, and recorded as Instrument No. 05062343 on April 22, 2005, together with the note and money due. The complaint further states that Moore "executed a Deed of Trust to Trace Robbins as Trustee for the benefit of Beneficial Tennessee Inc." in the amount of $31,000, which Deed of Trust was filed on February 7, 2007 and recorded with the Shelby County Register as Instrument No. 07024280. (*Id.* ¶ 18 & Ex. 2, Deed of Trust dated January 27, 2007.)

The complaint alleges that Moore attempted to pay the balance due on her mortgage to Carrington Mortgage Services, LLC by an electronic funds transfer ("EFT") in the amount of $161,894.64 sent by certified mail, that Carrington Mortgage Services, LLC refused to accept the EFT, and that Carrington Mortgage Services, LLC failed to

return the unidentified EFT instrument. (*Id.* ¶¶ 42-44).[3]  Moore

contends that the refusal to credit her account or return the EFT

instrument has discharged her debt. (*Id.* ¶ 44.)

The complaint sets forth the following causes of action: (1)

injunctive relief; (2) declaratory relief; (3) fraud and

misrepresentation; (4) wrongful foreclosure; (5) slander of title;

(6) unlawful interference with possessory interest; (7) conflict of

interest; and (8) lack of standing to commence foreclosure action.

(*Id.* ¶¶ 20-94.)  Moore seeks preliminary and permanent injunctive

relief enjoining the defendant from foreclosing on her house,

declaratory relief including a declaration that the defendants have

no enforceable lien on her house, reinstatement of Moore on the title

to the property, cancellation of the foreclosure sale, and

compensatory and punitive damages.

## II.  PROPOSED CONCLUSIONS OF LAW

It appears that Moore is arguing that no defendant has the

original note to prove that it is authorized to commence foreclosure

proceedings, or, that she paid the note in full by tendering an

electronic funds transfer by certified mail to Carrington Mortgage

Services, LLC, and because the EFT was rejected, the underlying note

should be considered paid in full and discharged.

---

[3]    In paragraph 42 of the complaint when referring to the EFT
and certified mail, Moore references Exhibits 5 and 6, but there are
no Exhibits 5 or 6 attached to the complaint.  Page 5 of Exhibit 3 is
a certified mail receipt of Carrington Mortgage Services, LLC dated
August 11, 2012, but contains no information as to the contents of
the mail.

A.    The Motion to Dismiss

On March 15, 2013, the defendants Carrington Mortgage Services, LLC, and Deutsche Bank National Trust Company as Trustee for Carrington Mortgage Loan Trust ("the Carrington defendants and Deutsche Bank") filed a motion to dismiss the complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure based on lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. The motion to dismiss was filed before the screening by the staff attorney pursuant to Local Rule 4.1 was completed and even though no service of process had issued. (Mot. to Dismiss, D.E. 7.) Moore has not responded to the motion to dismiss,[4] and the time for responding has expired.

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues. The court will address the Carrington defendants and Deutsche Bank's motion to dismiss as part of its screening.

B.    28 U.S.C. § 1915(e)(2) Screening

This report and recommendation will constitute the court's screening. The court is required to screen *in forma pauperis*

_____

[4] Before addressing a dispositive motion, the court ordinarily issues an order directing a nonmoving party who has failed to respond to show cause why the motion should not be granted. It is unnecessary to do so in this case because the action is appropriately dismissed *sua sponte* as to all parties for lack of subject matter jurisdiction.

complaints and to dismiss any complaint, or any portion thereof, if the action —

(i)      is frivolous or malicious;

(ii)      fails to state a claim on which relief may be granted; or

(iii)      seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

C.   Standard of Review for Failure to State a Claim

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of

6

the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 Fed. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 Fed. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 Fed. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

D.  Subject-Matter Jurisdiction

As an initial matter, the court must determine whether it has subject-matter jurisdiction over this action. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)("Federal courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 ("It is a fundamental precept that federal courts are courts of limited jurisdiction."). Federal courts are obliged to act *sua sponte* whenever a question about jurisdiction arises. *See, e.g., Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702 (stating that "a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion"); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938); *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*,

556 F.3d 459, 465 (6th Cir. 2009)("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*."). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

In her complaint, Moore alleges the following bases for this court's jurisdiction:

> The United States District Court for the Western District of Tennessee has jurisdiction based on "diversity jurisdiction" pursuant to The <u>United States Constitution</u>, <u>Article III, § 2</u> and 28 U.S.C. § 1331. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Pending foreclosure sales on Plaintiff's real property is in violation of the Constitution and laws of the United States. The Court has jurisdiction under 28 U.S.C. § 1332, in that the amount in controversy is in excess of $75,000.00. The Plaintiff also invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(4) in that the Plaintiff seeks to redress deprivation of rights guaranteed by both the Constitution and federal statutes.

(Compl. ¶ 14 (emphasis in original).)

1. Diversity Jurisdiction

According to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity of citizenship means that the action is between "citizens of different States." 28 U.S.C. § 1332(a).[5] A federal

_____

[5]    The complaint mis-cites 28 U.S.C. § 1331 as governing diversity jurisdiction. That statute addresses federal-question jurisdiction.

court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)(citations omitted). "To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983); *see also Johnson v. New York*, 315 Fed. App'x 394, 395 (3d Cir. 2009)(per curiam); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)(complaint did not properly allege diversity jurisdiction); *Leys v. Lowe's Home Ctrs., Inc.*, 601 F. Supp. 2d 908, 912-13 (W.D. Mich. 2009)(complaint and notice of removal did not adequately establish diversity jurisdiction); *Ellis v. Kaye-Kibbey*, No. 1:07-cv-910, 2008 WL 2696891, at *2-3 (W.D. Mich. July 1, 2008)(dismissing complaint for failure adequately to allege facts establishing diversity of citizenship despite conclusory allegation that diversity exists); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1208 (3d ed. 2004). Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Moore has failed to allege sufficient facts in her complaint to establish diversity jurisdiction. The complaint does not allege the citizenship of any of the parties. The complaint states Moore is "residing at c/o 5617 Annandale Drive, Memphis, Shelby County, Tennessee," but the complaint does not allege her citizenship. (*See* Compl., D.E. 1 ¶ 1.) The complaint alleges the place of incorporation and headquarters of seven of the nine defendants but

10

makes no allegations of citizenship as to any of the defendants. The complaint alleges that the defendant Carrington Mortgage Services, LLC, is a California corporation with its headquarters in Santa Ana, California; that the defendant New Century Mortgage Corporation is a California corporation with its headquarters in Irvine, California; that the defendant Washington Mutual is a Florida corporation with its headquarters in Jacksonville, Florida; that the defendant Homeside Lending is a Florida corporation with its headquarters in Jacksonville, Florida; that the defendant Amerifirst Mortgage Corporation is a New York corporation with its headquarters in Hempstead, New York; and that the defendant Beneficial Tennessee, Inc. is a Virginia corporation with its headquarters in Virginia Beach, Virginia, but the complaint contains no allegations as to either Deutsche Bank National Trust's place of incorporation or principal place of business. Thus, Moore has failed to plead sufficient facts to establish diversity jurisdiction, and the court lacks diversity jurisdiction.

2. Jurisdiction under 28 U.S.C. § 2241

The other federal statutes cited by Moore are insufficient to confer federal jurisdiction. Moore cites 28 U.S.C. § 2241 as a basis for jurisdiction. Section 2241, which governs writs of habeas corpus, requires that the movant be "in custody." *See* 28 U.S.C. § 2241(c). Moore is not a prisoner; therefore the court lacks subject-matter jurisdiction under 28 U.S.C. § 2241.

3. Jurisdiction under 28 U.S.C. § 1343(4)

Moore also cites 28 U.S.C. § 1343(4), which confers federal jurisdiction over suits "[t]o recover damages or to secure equitable

or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(a)(4). The Supreme Court has rejected the position that § 1343(4), now § 1343(a)(4), "encompass[es] all federal statutory suits," *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979), or "allow[s] jurisdiction without respect to the amount in controversy for claims which in fact have nothing to do with 'civil rights,'" *id.* at 620.

> [T]he Congress that enacted § 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably the right to vote. While the words of [that] statute[] are not limited to the precise claims which motivated their passage, it is inappropriate to read the jurisdictional provisions to encompass new claims which fall well outside the common understanding of their terms.

*Id.* at 621. In *Chapman*, the Supreme Court held that the Social Security Act is not a statute providing for "civil rights" within the meaning of § 1343(a)(4). *Id.* at 623.

Similarly, Moore's complaint in this case does not allege a violation of any federal statute providing for the protection of civil rights. Although the complaint contains scattered references to federal statutes, *see, e.g.*, Compl. ¶ 20(a) (promissory note "is specifically governed by federal law," without specifying the law), ¶ 21 (referring to "FDCA," without citation or elaboration), ¶ 25 (again referring to "FDCA"), ¶ 56 (National Currency Act of 1863, 12 Stat. 665), ¶¶ 57-58 ("Public Law Volume 13 of the 39th Congress Stat 119-118"), ¶ 89 ("15 U S C sec. 1635(a) and (b) and 12 CFR sec.

226.23(b)"),[6] ¶ 91 (Defendants "conducted an illegal enterprise within the meaning of RICO statute"), and ¶ 92 ("civil RICO"), none of the federal statutes cited in Moore's complaint provides for the protection of civil rights. Therefore, there is no jurisdiction under 28 U.S.C. § 1343(a)(4).

4. Federal-Question Jurisdiction under 28 U.S.C. § 1331

It is also necessary to consider whether there might be subject-matter jurisdiction under 28 U.S.C. § 1331, which provides for federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Despite scattered references to the United States Constitution, the complaint, however, does not allege a constitutional violation or that the defendants have violated any treaty. Nor does the complaint assert a viable claim arising under any federal statute, either. Even if the scattered references in the complaint to various federal statutes discussed below were construed as asserting claims under those statutes, the complaint still does not sufficiently allege a viable federal claim.

a. *Truth in Lending Act ("TILA") 15 U.S.C. §§ 1601 et seq.*

The complaint fails to state a claim under the Truth in Lending Act ("TILA"). The only reference to the TILA in the complaint occurs in the count entitled "Defendants Lack Standing to Commence Foreclosure Action/" (Compl. at 28). Paragraphs 88 and 89 of that cause state:

_____

[6]     The statutory provision is part of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*

13

88. Defendant's cause of action is barred in whole or in part due to Defendant's violation of state and federal Truth in Lending Acts.

89. Said violation, in addition to the fact that Plaintiff did not properly receive Notices [sic] Right to cancel, constitute violation of 15 U S C sec. 1635(a) and (b) and 12 CFR sec. 226.23(b) and are thus a legal basis for and legally extend Plaintiff right to exercise the remedy of rescission.

(Compl. ¶¶ 88, 89.)   Assuming that Moore is claiming that the defendants did not provide her the notice required by § 1635(a), rescission is untimely.[7]   Under 15 U.S.C. § 1635(f), "[a]n

---

[7]   15 U.S.C. § 1635(a) provides as follows:

(a) Disclosure of obligor's right to rescind

Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b) Return of money or property following rescission

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any
(continued...)

14

obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . ." 15 U.S.C. § 1635(f). Here, the mortgage transaction that is the subject of this lawsuit occurred either on April 5, 2005, or February 7, 2007. (*See* Compl., Exs. 2 & 3.) Regardless which transaction forms the basis of this lawsuit, more than three years have passed, and Moore's right to rescission is time-barred.

This limitations period is not subject to equitable tolling. *Famatiga v. Mortg. Elec. Registration Sys., Inc.*, No. 10-10937, 2011

---

[7]    (...continued)
finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. §§ 1635(a)-(b).

WL 3320480, at *4 (E.D. Mich. Aug. 2, 2011)("Courts in this district have interpreted § 1635(f) to completely preclude equitable tolling to the statute of limitations for a plaintiff's right to rescind."); *Reed v. Duetsche Bank Nat'l Trust Co.*, No. 1:09-cv-692, 2009 WL 3270481, at *4 (W.D. Mich. Oct. 5, 2009) (collecting cases); *Bolden v. Aames Funding Corp.*, No. 03-2827, 2005 WL 948592, at *3 (W.D. Tenn. Feb. 25, 2002); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998)(noting that TILA "permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run"). A time-barred TILA violation is not a defense to a subsequent foreclosure. *Beach*, 523 U.S. at 411-12. In addition, any claim for damages for a violation of TILA must be filed within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640. Therefore, the complaint fails to state a claim under TILA, and TILA does not provide a basis for federal-question jurisdiction.

> b. *Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq.*

The complaint also refers, in conclusory fashion, to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. These references are also found in the count entitled "Defendants Lack Standing to Commence Foreclosure Action" (Compl. at 28. Specifically, paragraphs 91 and 92 state as follows:

> 91. On information and belief and given that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all defendants share in the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiff out of the proceeds of the loan; acted in concert to wrongfully deprive the Plaintiff of his residence; acted in concert and conspiracy to essentially steal the

16

Plaintiffs [sic] home and/or convert the Plaintiff's home without providing Plaintiff reasonable equivalent value in exchange; and conducted an illegal enterprise within the meaning of RICO statute.

> 92.   The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires. The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the congressional purpose as broadly formulated in the Statute. *Sedima, SPRL v. Imrex Co.*, 473 US 479 (1985).

(Compl. ¶¶ 91-92.)

The complaint does not identify the provisions of RICO that defendants allegedly violated, but the court assumes that Moore is proceeding under Section 1964(c), RICO's provision authorizing civil suits for a violation of 18 U.S.C. § 1962.  It provides  provides in pertinent part that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . .

18 U.S.C. § 1964(c).  To establish a violation of Section 1962,[8] a plaintiff must show: "(1) that there were two or more predicate offenses; (2) that an 'enterprise' existed; (3) that there was a

_____

[8]    18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

nexus between the pattern of racketeering activity and the
enterprise; and (4) that an injury to business or property occurred
as a result of the above three factors. *VanDenBroeck v. CommonPoint
Mortg. Co.*, 2010 F.3d 696, 699 (6th Cir. 2001)." An "enterprise" can
be proven by showing that a group of persons formed an ongoing
organization; (2) that they functioned as a continuing unit; and (3)
that the organization was separate from the pattern of racketeering
activity in which it engaged. *Id*. RICO defines racketeering
activity to include any act that is indictable under certain
provisions of title 18 of the United States Code, including wire
fraud, 18 U.S.C. § 1343 and mail fraud, 18 U.S.C. § 1341.

The complaint contains no factual allegations that support the
elements of a civil RICO cause of action. There are no allegations
of an enterprise, of two or more predicate offenses, or of an injury
given that the foreclosure has not taken place.

Assuming Moore's allegations of fraud are meant to be the
underlying predicate offense, her complaint still fails to state a
civil RICO cause of action. A civil RICO claim based on allegations
of fraud must also comply with the particularity pleading requirement
of Rule 9 of the Federal Rules of Civil Procedure. *Brown v. Cassens
Transp. Co.*, 546 F.3d 347, 356 n.4 (6th Cir. 2008); *Blount Fin.
Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152-53 (6th
Cir. 1987); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 911 (E.D.
Cal. 2006). Rule 9 requires that, "[i]n alleging fraud or mistake,
a party must state with particularity the circumstances constituting
fraud or mistake. "The Plaintiff[] must plead more than a
generalized grievance against a collective group of Defendants in

order to meet the requirements of FRCP 9(b)." *Masterson v. Meade Cnty. Fiscal Court*, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)(quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). A plaintiff must, "[a]t a minimum," "allege the time, place and contents of the misrepresentations . . . ." *Id.* (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). A plaintiff who asserts a claim based on a failure to disclose must plead all the elements with particularity. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 72-73, 101 (3d ed. 2004).

In her complaint, Moore fails to identify any false statement allegedly made by any defendant, and much less the time and date of any false representation. Moore's complaint merely cites the elements of a cause of action for fraud and includes no factual allegations. Accordingly, Moore fails to plead fraud with the particularity required by Rule 9. Therefore, the various references

to RICO are insufficient to state a civil RICO claim and cannot form the basis for federal-question jurisdiction.

c. *Claims under the National Currency Act*

The various references to the National Currency Act and the assertion that "Federal Reserve notes are not money by law" are insufficient to invoke federal-question jurisdiction. The theory that Federal Reserve notes are not legal tender is meritless as a matter of law, as another district court in this circuit has explained:

> In arguing that the system of lending money in the United States is unconstitutional, Plaintiff cites Sections 8 and 10 of Article I in the United States Constitution. . . . Nonetheless, ever since the Supreme Court ruled in "*The Legal-Tender Cases*," in 1884, Courts have consistently held that neither of these provisions of the Constitution renders the country's current money-lending system unconstitutional. *See Julliard v. Greenman* ("*The Legal-Tender Cases*"), 110 U.S. 421, 447-48, 4 S. Ct. 122, 28 L. Ed. 204 (1884) (holding that Congress has the power of making the notes of the United States a legal tender in payment of private debts, and that such power is not restricted by the fact that its exercise may affect the value of private contracts); *United States v. Ri[f]en*, 577 F.2d 1111, 1113 (8th Cir. 1978) (art. I, § 10 of the Constitution does not "limit Congress' power to declare what shall be legal tender for all debts," and the fact that the type of money in use is neither gold nor silver does <u>not</u> render a loan unconstitutional); *Foret v. Wilson*, 725 F.2d 254 (5th Cir. 1984) (dismissing plaintiff's argument that only gold and silver coin may be constituted legal tender by the United States); *Edgar v. Inland Steel Co.*, 744 F.2d 1276, 1277 (7th Cir. 1984) (finding untenable plaintiff's argument that federal reserve notes are not "money" because they are not backed by gold and silver specie); *L.R. Nixon v. Phillipoff*, 615 F. Supp. 890 (N.D. Ind. 1985) (finding that plaintiff's [sic] misinterpreted art. I, §§ 8 and 10 of the Constitution, and holding that Section 10 acts only to "remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender"); *Kolb v. Naylor*, 658 F. Supp. 520 (N.D. Iowa 1987) (finding that the loans to plaintiffs constituted the lending of money and the creation of a debt, rather than the creation of money); *United States v. Schiefen*, 926 F.

Supp. 877 ([]D.S.D. 1995) (noting that Schiefen's argument that United States currency is unconstitutional "unbacked paper" has been rejected by numerous courts); *State ex rel. White v. Mack*, 93 Ohio St. 3d 572, 757 N.E.2d 353, 355 (Ohio 2001) (citing *Baird v. Cty. Assessors of Salt Lake & Utah Ctys.*, 779 P.2[d] 676, 680 (Utah 1989)) (finding that the provision in art. I, § 10 of the United States Constitution is not a directive to states to use only gold or silver coins, but is "merely a restriction preventing states from establishing their own legal tender other than gold or silver coins").

*Nixon v. Phillipoff* provides a thorough analysis of why courts consider federal reserve notes to be a constitutional form of legal tender. *See* 615 F. Supp. 893. In *Nixon*, plaintiff, a *pro se* litigant, sued the individual who had filed a mortgage foreclosure action against him, the clerk of court who had accepted the filing fee for that foreclosure, and the judge who had accepted jurisdiction over the foreclosure. *See id.* at 890. Plaintiff's argument rested, in part, on his assertion that art. I, § 10, clause 1 of the United States Constitution requires a state to accept and recognize only gold and silver coin as legal tender. *See id.* at 893. The court, however, rejected Nixon's argument, concluding:

> Nixon's interpretation of article 1, § 10 creates a rather curious inconsistency with article 1, § 8, clause 5. If states can only recognize gold and silver coin as legal tender, then Congress does not have complete power to declare what shall constitute legal tender for payment of all debts, for a declaration that a treasury note or federal reserve note was legal tender would fly in the face of the restriction of § 10. While this is the conclusoin [sic] which Nixon wants this court to reach (in effect declaring federal reserve notes illegal), it flies in the face of the clear import of § 8, clause 5's unrestricted language. The power to coin money necessarily carries with it the power to declare what is money, and the constitution does not limit Congress to gold and silver coin ... It strains logic and constitutional interpretation to claim that the framers of the constitution sought to limit Congress' power to coin money via an implication derived from a restriction directed not at Congress but at the states.

*Id.* at 893. Moreover, the court explained that,

> Nixon has misinterpreted the import of § 10's prohibition. Courts have uniformly interpreted §

10 as prohibiting states from declaring anything other than gold or silver coin as legal tender ... yet [*The Legal-Tender Cases*] do not interpret § 10 as requiring states to accept only gold and silver coin as tender, nor could they, as they both recognize the unrestricted power of Congress to declare what shall constitute legal tender, including bills of credit, treasury notes, and federal reserve notes. In short, § 10 acts only to remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender. Thus ... the states are constitutionally compelled to accept [federal reserve notes] as legal tender.

> *Id.*

In this case, where Plaintiff's arguments all rest on his assertion that, according to art. I, §§ 8, and 10 of the constitution, Defendants unconstitutionally created money, his argument fails as a matter of law. Private parties may enter into transactions to trade whatever they agree upon as having equal value, and they are not limited to gold and silver coins. . . . Though Plaintiff asserts that Defendants' loans were unlawful because they did not provide him with any "real, gold or silver backed money" as constitutionally mandated, as evidenced above, Courts have long held that such transactions are both <u>legal</u> and <u>constitutional</u>. Hence, Plaintiff's claims are entirely without merit.

*Rudd v. KeyBank, N.A.*, No. C2-05-CV-0523, 2006 WL 212096, at *4-6 (S.D. Ohio Jan. 25, 2006)(emphasis in original); *see also Rahman El v. First Franklin Fin. Corp.*, No. 09-cv-10622, 2009 WL 3876506, at *7 (E.D. Mich. Nov. 17, 2009)(same, collecting cases).

Finally, Moore's contention that mortgages having a term longer than five years are illegal is meritless. (*See* Compl. ¶ 59.)

12 U.S.C. § 371 expressly authorizes national banks to engage in real estate lending, and provides, in relevant part: "Any national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to section 1828o of the title and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order." 12 U.S.C. § 371(a). Section 1828o does not contain a time limitation. While 12 U.S.C. § 29 does prohibit a

national banking association from holding "the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it, for a period longer than five years," this provision is inapplicable to plaintiff's Complaint because plaintiff does not allege, nor does it appear from the record, that any defendant ever possessed the property that is referenced in the note and in plaintiff's complaint.

*Barnes v. Wells Fargo & Co.*, No. 4:10CV619 FRB, 2010 WL 3911405, at *4 (E.D. Mo. Sept. 30, 2008); *see also Barnes v. Citigroup, Inc.*, No. 4:10CV620 JCH, 2010 WL 2557508, at *3 (E.D. Mo. June 15, 2010) (finding 12 U.S.C. § 29 "inapplicable, as Defendants do not possess Plaintiff's home"). "[T]hirty-year mortgages are common in the lending industry." *Wilson v. Bank of Am. Corp.*, No. 4:10-CV-512 CAS, 2010 WL 3843781, at *4 (E.D. Mo. Sept. 27, 2010); *see also Barnes*, 2010 WL 2557508, at *3 ("[N]ational banks are permitted to 'make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate,' and thirty-year mortgages are common in the lending industry.").

> d. *Claims under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq.*

Finally, the references to the EFT are insufficient to invoke federal-question jurisdiction. The complaint refers, in passing, to the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.,* in the count entitled Wrongful Foreclosure." (Compl. ¶¶ 42-45.)

The Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), was enacted as part of the comprehensive Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r ("CCPA") and "protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Clemmer v. Key*

*Bank Nat'l Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008)(citing 15 U.S.C. § 1693(b)). Because EFTA is a remedial statute, it is accorded "'a broad, liberal construction in favor of the consumer.'" *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998)).

Under the EFTA, the term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. 15 U.S.C. § 1693a(7). Electronic fund transfers covered by the Act have three components: 1) a transfer of funds, 2) initiation by electronic means, and 3) a debit or credit to a consumer account.

Here, Moore alleges in her complaint that she initiated an EFT transfer by certified mail, not by electronic transfer. Her attempted transaction is therefore clearly not covered by the EFTA. Accordingly, the complaint fails to state a claim under the EFTA, and EFTA is not a basis for federal-question jurisdiction.

In sum, Moore fails to state in her complaint a claim arising under any federal law, and therefore the court lacks subject-matter jurisdiction under 28 U.S.C. § 1331.

E.   The Remaining State Law Claims

Moore purports to assert claims under state law for Fraud and Misrepresentation (Compl., D.E. ¶¶ 31-37), Wrongful Foreclosure (Compl., D.E. ¶¶ 38-45), Slander of Title (Compl., D.E. ¶¶ 46-51), Unlawful Interference with Possessory Interest (Compl., D.E. ¶¶ 52-59), Conflict of Interest (Compl., D.E. ¶¶ 60-79), and Lack of Standing to Commence Foreclosure Action (Compl., D.E. ¶¶ 80-94).[9]

1.   Jurisdiction over Remaining State-Law Claims

As discussed above, the court has determined that every federal claim asserted by the plaintiff should be dismissed for failure to state a claim and lack of federal subject-matter jurisdiction. Without a basis for federal jurisdiction, the court should not exercise supplemental jurisdiction over any state law claims by Moore. *See* 28 U.S.C. § 1367(c)(3)("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, it is recommended that any remaining state-law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

2.   Dismissal of Remaining State Law Claims for Failure to State a Claim Pursuant to Rule 12(b)(6)

The state law claims should also be dismissed for failure to state a claim because the complaint fails to state any plausible claims under state law. The court has already determined herein that

---

[9]   In the sections entitled "Injunctive Relief" and "Declaratory Relief," there are no factual allegations. To the extent these sections set forth remedies sought and not causes of actions, these two sections fail to state any plausible claim.

Moore has failed to plead a claim for fraud with particularity as required by Rule 9, in that she failed to identify any false statement allegedly made by any defendant, and much less, the time and date of any false representations.

Moore's purported state-law claims for Unlawful Interference with Possessory Interest and Conflict of Interest are not recognized torts in Tennessee, and her purported state-law claims for Wrongful Foreclosure and Lack of Standing are not supported by existing state law. It appears these claims are based on the theory that a foreclosure sale is improper because the transfer and/or assignment of the original note in question is invalid. This theory was rejected by this court in *Gibson v. Mortgage Electronic Registration Systems Inc.*, No. 11-2173, 2012 WL 1601313 (W.D. Tenn. May 7, 2012)(Anderson, J.). Under Tennessee law, "the lien of a mortgage or trust deed passes, without a special assignment thereof, to the endorsee of a note or transferee of the debt secured by the instrument." *Id*. at *4. Moreover, Moore has pleaded no plausible facts to support her theory that the transfer of the note was invalid. Indeed, Exhibit 1 to the complaint is in fact an assignment of the deed of trust, note, and the debt from New Century Mortgage Corporation, by and through Carrington Mortgage Services, LLC as its attorney in fact, to Deutsche Bank National Trust Company, as Trustee for Carrington Mortgage Loan Trust.

Moore's purported state-law claim for Slander of Title likewise is not supported by any plausible facts. To establish a claim for slander of title under Tennessee law, a plaintiff must show: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the

defendant was acting maliciously, and (4) that the false statement proximately caused the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999). The complaint fails to allege any malice or any facts that would give rise to a reasonable inference of malice. *See Waterhouse v. McPheeters*, 145 S.W.2d 766, 767 (Tenn. 1940)(allegations of malice must be in express terms or by showing facts which would give rise to a reasonable inference of malice). Thus, Moore fails to state a claim for slander of title.

### III. CONCLUSION

For the foregoing reasons, it is recommended that the Carrington defendants and Deutsche Bank's motion to dismiss for lack of jurisdiction and failure to state a claim be granted and also that the complaint be dismissed *sua sponte* for lack of subject-matter jurisdiction, pursuant to Rules 12(b)(1) and (h)(3) of the Federal Rules of Civil Procedure, and for failure to state a claim pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2) as to all the defendants, and judgment be entered for all the defendants.

Respectfully submitted this 10th day of May, 2013.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. FED. R. CIV. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.